UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CARL JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 1:14-cv-01140-JMS-TAB |
| DR. DALE COCKRELL, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Cross-Motions for Summary Judgment
and Directing Entry of Final Judgment**

The plaintiff's motion to admit prior court's order [Docket No. 14] is **denied** because the facts of the other case, 2:12-cv-00337-WTL-MJD, are different than the facts of this case. The plaintiff's motion to supplement [Docket No. 15] is **granted** only to the extent that the Court considered the supplement filed on November 18, 2014. For the reasons explained in this Entry, the plaintiff's motion for summary judgment [Docket No. 14] is **denied** and the defendant's cross-motion for summary judgment [Docket No. 17] is **granted.**

**I. Background**

The plaintiff in this 42 U.S.C. § 1983 civil rights action is Carl Johnson ("Mr. Johnson"), an inmate who at all relevant times was confined at the Correctional Industrial Facility ("CIF"). The defendant is Dr. Dale Cockrell ("Dr. Cockrell"). Mr. Johnson alleges that Dr. Cockrell was deliberately indifferent to his serious medical need consisting of a shoulder condition.

The defendant has responded to the plaintiff's motion for summary judgment and also seeks summary judgment. The cross-motions are fully briefed.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## III.  Discussion

### A. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Mr. Johnson, the following facts are undisputed for purposes of the cross-motions for summary judgment:

On or about December 12, 2013, Mr. Johnson was transferred from Wabash Valley Correctional Facility ("Wabash Valley") to CIF. On December 12, 2013, he submitted a Request for Health Care stating that he was experiencing pain in his right shoulder. He stated that it hurt to

climb into his upper bunk bed. He requested pain killers and a lower bunk pass. He was seen by a nurse and referred to a medical provider for further evaluation. Dr. Cockrell saw Mr. Johnson on December 17, 2013. Mr. Johnson reported to Dr. Cockrell that he suffered an AC (acromioclavicular) joint separation resulting from a car accident in 1997. Mr. Johnson complained of periodic popping, cracking and pain in his right shoulder which he stated was aggravated by movement. He stated he had received cortisone injections in the past to address shoulder pain. Mr. Johnson's physical examination was normal with the exception of his right shoulder issues. In order to further assess Mr. Johnson's complaints of shoulder discomfort, Dr. Cockrell ordered bilateral x-rays of Mr. Johnson's AC joints.

Both of Mr. Johnson's acromioclavicular joints were x-rayed with and without weights. The purpose of taking a shoulder or AC joint x-ray with weights is to stress the affected joint to see if there is any instability. On December 19, 2013, Dr. Cockrell reviewed Mr. Johnson's x-ray report. The conclusions of the report were that although there were changes in the right clavicle and the right AC joint was widened by 7 millimeters as a result of the old injury, the right AC joint was stable and had scarred down as evidenced by the fact that there was no widening of the AC joint with the weights. The x-ray of the left AC joint was normal.

On January 30, 2014, Tina Collins, L.P.N. reviewed the December 17, 2013, x-ray report with Mr. Johnson. The nurse report reflects that Ms. Collins informed Mr. Johnson that his x-ray report revealed that the widening of his AC joint was stabilized by bone scarring down to fill in the widened space in his AC joint. Mr. Johnson stated to Ms. Collins that he disagreed with the x-ray report and believed that the bone in his shoulder was free-floating and needed surgery to correct. Mr. Johnson was not receptive to Ms. Collins' explanation of his shoulder condition.

On March 18, 2014, Dr. Cockrell saw Mr. Johnson for evaluation of what Mr. Johnson described as episodic "popping associated with shifting" of his right shoulder bones which resulted in temporary pain and weakness. Mr. Johnson stated that he associated this popping and shifting of his right shoulder bones with at least one fall when he was climbing into his top bunk. When Dr. Cockrell offered to examine Mr. Johnson's shoulder for pain or weakness Mr. Johnson declined, stating that his shoulder was fine and he was not experiencing pain except during the periodic episodes when his shoulder "shifted and popped." Dr. Cockrell again explained to Mr. Johnson that the results of his recent x-ray reflected that his AC fracture had scarred down firmly, preventing any instability or shifting in the joint. There was no evidence of an open fracture, "free floating" bones, or any indication that surgery or other treatment was required to stabilize the shoulder. It was Dr. Cockrell's opinion that the shoulder injury from 1997 had healed appropriately. Mr. Johnson demanded that Dr. Cockrell request an MRI and a bottom bunk pass. Mr. Johnson had been given a bottom bunk pass in 2005 when he was incarcerated at Wabash Valley.

There is no evidence that Mr. Johnson sought treatment for any injury suffered at the time of any fall from an upper bunk and it was Dr. Cockrell's opinion that based on Mr. Johnson's medical condition and resulting limitations, he did not require a bottom bunk. Dr. Cockrell complied, however, with Mr. Johnson's desire by submitting a consultation request to the Regional Medical Director requesting that Mr. Johnson be evaluated for an MRI of his right shoulder and be evaluated for a bottom bunk pass. Dr. Cockrell noted in the consultation request that recent x-rays of Mr. Johnson's shoulders reflected that the 1997 fracture had scarred down firmly which prevented any instability. The x-ray revealed no chronic or acute bony changes which could cause the bones to "shift." The request also noted that Mr. Johnson refused further examination of his

shoulder. Dr. Cockrell further noted, based on his examinations of the patient and review of the medical records, that in his opinion, Mr. Johnson had minimal dysfunction and minimal, if any, effect on his daily living requirements.

The Regional Medical Director reviewed the consultation request and determined that Mr. Johnson did not meet the criteria for an MRI or a bottom bunk pass. Dr. Cockrell agreed with the assessment of the Regional Medical Director.

Dr. Cockrell's examinations of Mr. Johnson and review of his medical records did not reveal evidence of any condition that required prescription pain medication, a referral to a specialist, or further diagnostic imaging, such as CT or MRI imaging. Mr. Johnson's reports of pain in his right shoulder were episodic and connected to his reports of his shoulder bones "shifting and popping." Dr. Cockrell's examination of Mr. Johnson and review of his medical records -- including x-rays of his affected AC joint -- did not provide any evidence of shoulder instability or that his AC joint was "shifting."

### B. Analysis

At all times relevant to Mr. Johnson's claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care.

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014). "Something more than negligence or even malpractice is required." *Id.*

"The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Id.* "A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Id.* (internal quotation omitted).

For purposes of summary judgment, the parties do not dispute that Mr. Johnson had a serious medical need. Rather, they disagree as to whether Dr. Cockrell was deliberately indifferent to Mr. Johnson's shoulder condition.

Mr. Johnson first argues that after he submitted his December 12, 2013, Request for Health Care, Dr. Cockrell did not respond until February 26, 2014. This allegation is controverted by the admissible evidence which reflects that Dr. Cockrell examined Mr. Johnson on the morning of December 17, 2013. There is no evidence showing that Mr. Johnson's shoulder condition

presented an emergency situation. The car accident that caused the shoulder injury reportedly occurred in 1997.

Mr. Johnson alleges that he fell out of his top bunk at least once, which exacerbated his shoulder pain, however, there is no evidence in the medical records or any date noted where Mr. Johnson requested medical attention, pain medication, or suffered any injury from a purported fall from his bunk at CIF. Nonetheless, Dr. Cockrell did examine Mr. Johnson and ordered an x-ray. The x-ray indicated that the old injury to the right AC had scarred down firmly and prevented widening of the joint with or without weight. Although Mr. Johnson told a nurse that he needed surgery, Dr. Cockrell opined that no further treatment was necessary.

It was Dr. Cockrell's opinion that Mr. Johnson's shoulder condition caused only minimal dysfunction and minimal effect on his daily living requirements and therefore did not require a bottom bunk assignment. Although Mr. Johnson had been given a bottom bunk pass "indefinitely" in 2005 when he was incarcerated at Wabash Valley, that decision is not determinative with respect to Mr. Johnson's condition when he was examined years later by Dr. Johnson. Moreover, the fact that Mr. Johnson had received an arm sling, ice packs, heat, injections, and pain medication for his shoulder in years past at other prisons does not compel a finding that Dr. Cockrell's decisions constituted deliberate indifference. Indeed, when Dr. Cockrell offered to examine the shoulder for pain or weakness on March 18, 2014, Mr. Johnson said that he was not in pain at that time and that his shoulder was fine except when it shifted and popped.

In his reply, Mr. Johnson argues that Dr. Cockrell violated various Department of Correction directives concerning medical history and continuity of care, however, this does not help his Eighth Amendment case. Such directives do not provide a separate cause of action and a

violation of state law does not form the basis for relief under section 1983. *J.H. ex rel. Higgin v. Johnson,* 346 F.3d 788, 793 (7th Cir. 2003).

It was Dr. Cockrell's opinion based on the x-ray and the medical records that Mr. Johnson's shoulder injury had sufficiently healed and that no pain medication, specialist referral, surgery, or additional MRI imaging was required. Nothing in the record demonstrates that Dr. Cockrell's opinions represented so significant a departure from accepted professional standards or practices as to call into question whether he actually applied his professional judgment. It is clear that Mr. Johnson disagrees with Dr. Cockrell's assessment, however, "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles,* 771 F.3d at 409. There is no genuine issue of fact as to whether Dr. Cockrell was deliberately indifferent to Mr. Johnson's shoulder condition.

## IV.  Conclusion

Dr. Cockrell is entitled to summary judgment. Accordingly, his motion for summary judgment [Docket No. 17] is **granted.** Mr. Johnson's motion for summary judgment and supplement thereto [Docket No.14] [Docket No. 15] are **denied.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: _____06/16/2015_____

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution attached.

Distribution:

CARL JOHNSON
Reg No. 955761
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Electronically Registered Counsel